UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CURTIS LOGAN LAWSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 3:20-CV-456-JRG-HBG |
| | ) | |
| KNOX COUNTY CRIMINAL COURT, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Petitioner Curtis Logan Lawson, a Tennessee inmate proceeding pro se, has filed a federal habeas petition pursuant to 28 U.S.C. § 2254 challenging the legality of his convictions for burglary, theft, and criminal trespass [Doc. 1]. Respondent has filed an answer [Doc. 11]. Petitioner has not filed a reply, and the deadline to do so has passed. E.D. Tenn. L.R. 7.1. Having considered the submissions of the parties, the state court record, and the law applicable to Petitioner's claims, the Court finds that the petition should be denied.

## I.    SUMMARY OF EVIDENCE & PROCEDURAL HISTORY

On December 26, 2016, Robert McAuley, a loss prevention officer at the University Commons Walmart in Knoxville, Tennessee, observed Petitioner gather various items of merchandise throughout the store and place those items in a blue basket [Doc. 6-6 at 29-34]. Petitioner then placed the merchandise in a Walmart bag and went to customer service and waited in line [*Id*. at 34-36]. McAuley observed Petitioner return the merchandise for a cash refund [*Id*. at 36]. McAuley left his office and confronted Petitioner, who accompanied McAuley back to his office [*Id*.].

Once in the office, McAuley obtained Petitioner's personal information and asked for the money back [*Id*.]. Petitioner complied and explained that the money was for a late Christmas gift for his kids [*Id*. at 36-37]. McAuley printed off transaction records for the two refunds: one for a pair of jeggings valued at $12.98, and the second for toothbrush heads and detergent pods valued at $26.70 [*Id*. at 59-62]. A videorecording of the incident was played for the jury [*Id*. at 65-66].

McAuley also obtained a Notification of Restriction from Property, signed by Defendant in September 2012, which prohibited Petitioner from entering any Walmart-owned property [*Id*. at 70]. This notification, which was entered into evidence, informed Petitioner that he could be "charged with criminal trespass" if he entered Walmart's property, and that the restriction "will remain in effect until Wal-Mart Stores, Inc., rescinds it." [Doc. 6-6 at 89-95; Doc. 6-12 at 15].

McAuley agreed that the University Commons Walmart was open 24 hours a day and closed only on Christmas Day [Doc. 6-6 at 75]. He further agreed that the store was open to the public, that there were no "no trespassing signs," that no one checked identification as persons enter the store, and that no membership card was required to enter the store [*Id*. at 75-79]. He agreed that customers are not checked against the trespass list when purchasing merchandise, filling prescriptions at the pharmacy, or returning merchandise [*Id*. at 79-80]. McAuley stated that anyone on the trespass list could visit Walmart on multiple occasions and never be checked against the trespass list unless there was a problem, like shoplifting [*Id*. at 81]. He testified that the trespass list, which is nationwide and encompasses thousands of individuals, is enforced by advising the individual of their ban and relying upon "their good faith to stay off the property." [*Id*. at 82].

McCauley testified that even though Petitioner signed his name when he made the refunds on December 26, 2016, the customer service representative did not have access to the trespass list [*Id*. at 85-86]. He agreed that no one would have stopped Petitioner to check his status when he

made purchases, and that the trespass notice does not indicate that a person may be charged with burglary [*Id*. at 81]. McCauley explained the trespass notification procedure, which includes reading the form to the individual, explaining it to him or her, resolving any questions the individual might have, and then obtaining signature of the individual [*Id*. at 92-94]. McCauley explained that the ban is a lifetime ban from all Walmart properties [*Id*. at 94]. He agreed, however, that he was not present when Petitioner received the trespass notification, and therefore, did not know if the usual procedure was followed [*Id*. at 96].

Nick Phillips, employed by the Knox County Sheriff's Department as a member of the Organized Retail Crime Unit ("ORC") who was present with McAuley at the time of the incident, collected evidence and filed burglary charges against Petitioner [Doc. 6-6 at 97-104].

Angela McDonald, the assistant manager at Walmart in Sevierville, Tennessee, where Petitioner signed the September 2012 trespass notification, testified that part of her responsibilities included providing no-trespass notices [Doc. 6-7 at 25-27]. McDonald explained that she always followed the same procedure, which required having the individual read the form, explaining that the individual is thereafter banned from all Walmart properties, answering any questions, having the individual sign the form, and then signing the form herself [*Id*. at 32]. After that procedure is complete, an asset protection associate gets the individual's personal information and places it in the company's internal database [*Id*. at 32-33]. McDonald did not remember Petitioner specifically, but she was able to identify Petitioner's no-trespass notice from September 22, 2012 [*Id*. at 29].

Petitioner opted not to testify in his own defense. He did, however, present the testimony of his ex-girlfriend, Ashley Giebudowski, who was present with Petitioner at Walmart on December 26, 2016 [Doc. 6-8 at 17-18]. Giebudowski stated that in the year or so she dated

Petitioner, they frequented different Walmart stores around Knoxville almost weekly, and that Petitioner would make purchases either using cash or an EBT card with his name on it [*Id*. at 18-19]. She stated that no one had ever stopped them from entering the store or checked their identification as they entered [*Id*. at 20]. Giebudowski testified that she was not aware of what Petitioner was doing in Walmart on December 26, 2016, as they were separated in the store [*Id*. at 18]. She stated that Petitioner did not enter the store with any receipts or merchandise, so she assumed when she met up with him in customer service that he had gone back to the car to retrieve those items [*Id*. at 29-30]. Giebudowski testified that Petitioner appeared calm while standing in line and did not do anything to arouse suspicion [*Id*. at 30]. When he was finished with his return, Petitioner asked Giebudowski to put some change in her purse [*Id*.]. After they were approached by the loss prevention officer, Petitioner told Giebudowski that he had done something and would explain later [*Id*. at 33]. Giebudowski was in the loss prevention office when Petitioner admitted stealing the items and returning them for a refund [*Id*. at 34]. Giebudowski maintained that she was familiar with Petitioner's signature and denied that the signature on the notification form was not his [*Id*. at 34]. She did identify Petitioner as the person in the picture from Walmart's internal database [*Id*. at 34-35].

A Knox County Grand Jury indicted Petitioner with one count of burglary, one count of theft of merchandise, and one count of criminal trespass [Doc. 6-1 at 5-7]. Following his jury trial, Petitioner was convicted as charged [Doc. 6-12 at 105-07]. After conducting a sentencing hearing, the trial court sentenced Petitioner to twelve years to serve at sixty percent for burglary, eleven months and twenty-nine days for theft, and thirty days for criminal trespass, all to be served concurrently with each other and with Petitioner's sentence in an unrelated case [Doc. 6-3 at 31-

4

33].[1]  On direct appeal, the Tennessee Court of Criminal Appeals ("TCCA") affirmed the conviction.  *State v. Lawson*, No. E2018-01566-CCA-R3-CD, 2019 WL 4955180 (Tenn. Crim. App. Oct. 8, 2019) *perm. app. denied* (Tenn. Mar. 25, 2020).  The Tennessee Supreme Court denied Petitioner's application for discretionary review [Doc. 6-23].

On or about October 30, 2020, Petitioner filed the instant federal habeas challenging his burglary conviction [Doc. 1].  Respondent complied with a subsequent order to respond to the petition by filing an answer on February 17, 2021 [Doc. 11].

## II.    LEGAL STANDARD

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in a state court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal habeas relief may be granted under the "contrary to" clause where the state court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  Under the "unreasonable application" clause, a federal court may grant relief where the state court applies the correct legal principle to the facts in an unreasonable manner.  *Williams*, 529 U.S. at 407-08; *Brown v. Payton*, 544 U.S. 133, 141 (2005).  Whether a decision is "unreasonable" is an objective inquiry; it does not turn on

---

[1] The same date, Petitioner was sentenced to an effective sentence of eleven months and twenty-nine days upon his guilty plea to driving under the influence and driving while his license was revoked [Doc. 6-11 at 47].

whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable − a substantially higher threshold."); *Williams*, 529 U.S. at 410-11. This standard will allow relief on a federal claim decided on its merits in state court only where the petitioner demonstrates that the state ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). When evaluating the evidence presented in state court, a federal habeas court presumes the correctness of the state court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## III. BURGLARY STATUTE

In his first ground for relief, Petitioner argues that a person cannot be held guilty of an offense without first understanding the consequences of their actions, and that "[t]here is no way anyone could know that shoplifting under $500.00 would grant a felony conviction" [Doc. 1 at 5]. The Court understands this argument to challenge the applicability of the statute to the facts of Petitioner's case and the sufficiency of the evidence.

### A. Applicability

The Court considers whether Petitioner's due process rights were violated by application of the burglary statute to his conduct. Specifically, the Court considers whether the burglary statute provides "a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008) (citing *Hill v. Colorado*, 530 U.S. 703, 732 (2000)).

6

Petitioner was convicted of burglary under Tennessee Code Annotated § 39-14-402(a)(3), which provides, in relevant part, that "[a] person commits burglary who, without the effective consent of the property owner: . . . [e]nters a building and commits or attempts to commit a . . theft." Tenn. Code Ann. § 39-14-402(a)(3). The Tennessee Supreme Court recently stated:

> We hold that Tennessee Code Annotated section 39-14-402(a)(3) is not vague as applied. It is not ambiguous and provides fair warning to individuals who enter a building without the owner's effective consent and commit a felony, theft, or assault. In addition, we find no due process violation in construing Tennessee Code Annotated section 39-14-402(a)(3) to be applicable to buildings open to the public, such as a retail stores, when, as in this case, consent to enter has been expressly revoked.

*State v. Welch*, 595 S.W.3d 615, 629 (Tenn. 2020).

Here, Petitioner entered Walmart, which is unquestionably a building. *See* "Building," *Black's Law Dictionary*, at 194-95 (10th ed. 2014) (defining "building" as a "structure with walls and a roof, esp. a permanent structure"). Petitioner entered the building at a time when his consent to enter had been revoked, and he committed a theft while therein. Therefore, the Court finds that the burglary statue provides fair notice that Petitioner's conduct was unlawful and constituted the crime of burglary, and thus, does not violate due process principles prohibiting vague laws. *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so he may act accordingly."). Accordingly, the decision rejecting Petitioner's challenge to the burglary statute is not contrary to, nor does it involve an unreasonable application of, the constitutional law governing due process challenges.

## B. Sufficiency of the Evidence

The Court otherwise considers whether the evidence against Petitioner is sufficient to sustain his burglary conviction. A challenge to the sufficiency of the evidence is governed by the

7

standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which allows a reviewing court to set aside a verdict on the basis of insufficient evidence only if, "after viewing the evidence in the light most favorable to the prosecution," no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution and must defer to that resolution, because such a standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Because both the AEDPA and the *Jackson* standard apply to insufficiency claims, this Court's review is doubly deferential. *See Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).

Applying the *Jackson* standard, the TCCA rejected Petitioner's claim, holding (1) "subsection (a)(3) is not limited to buildings that are not open to the public," and (2) Petitioner did not gain Walmart's effective consent to enter its properties by repeatedly trespassing on those properties. *See, e.g., Lawson*, 2019 WL 4955180, at *9-10. As the Court has already noted, the burglary statute's elements require that an individual (1) enter a building; (2) without the effective consent of the owner to enter; and (3) therein commit or attempt to commit a theft. Tenn. Code Ann. § 39-14-402(a)(3).

The evidence presented at trial demonstrated that Petitioner was banned from Walmart properties on September 22, 2012, and that ban continues in place unless rescinded by Walmart [Doc. 6-7 at 29; Doc. 6-12 at 15]. The evidence further demonstrated that Petitioner's restriction from the property was not rescinded, as Petitioner was in the no-trespass list of the company database as of December 26, 2016, which he would not have been if the ban had been rescinded [*Id.* at 56, 58]. Further, McAuley testified that he observed Petitioner take items from the store,

place them in a Walmart bag without paying for them, wait in a customer return line, and exchange the items for cash [Doc. 6-6 at 33-36]. Surveillance footage showing same was played for the jury [*Id*. at 38]. Therefore, the Court finds that a rational trier of fact could find that Petitioner entered Walmart without their effective consent and therein committed a theft. Accordingly, the decision rejecting this claim is not contrary to, nor does it involve an unreasonable application of, *Jackson*.

## IV.    JURY INSTRUCTIONS

Petitioner's second and third federal habeas claims concern the denial of two of the defense's proposed jury instructions: mistake of fact and the rule of lenity. However, there is no general federal right to a properly instructed jury; jury instructions are ordinarily a state law issue. *See Estelle v. McGuire*, 502 U.S. 62, 70-72 (1991). As such, errors in a state court's jury instructions do not warrant federal habeas relief unless they deprive a petitioner of a fundamentally fair trial. *Estelle*, 502 U.S. 72-73; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). Therefore, a petitioner seeking federal habeas relief on the basis of jury instructions must establish that the absence of the instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). It is with these principles in mind that the Court considers the rejected instructions.

### A.    Mistake of Fact

Petitioner asserts that he is entitled to federal habeas relief based on the rejection of his proffered mistake-of-fact instruction, which would have instructed the jury that, "if from all the facts and circumstances you find the defendant acted through ignorance or mistake of fact, or if you have a reasonable doubt that the defendant acted through ignorance or mistake of fact, you must find him not guilty" [Doc. 1 at 6; Doc. 6-1 at 142].

On appeal, Petitioner argued that the trial court erred in denying a mistake-of-fact instruction, as the evidence could have allowed a juror to conclude that Petitioner did not remember, four years after receiving the no-trespass notification, that he was still prohibited from entering Walmart. *See Lawson*, 2019 WL 4955180, at *8. The TCCA noted:

> The culpable mental state for burglary under subsection (a)(3) can be intentional, knowing, or reckless. *See State v. Jason Goolsby*, No. M2002-02985-CCA-R3-CD, 2006 WL 3290837, at *2 (Tenn. Crim. App. Nov. 7, 2006) (citing T.C.A. § 39-11-301(c)), *perm. app. denied* (Tenn. Mar. 12, 2007). Thus, to negate the culpable mental state, there must be evidence that reasonable minds could accept that Defendant's ignorance or mistake of fact caused him to be unaware of the risk that Walmart did not consent to his entry. *See* T.C.A. § 39-11-302(c) (defining recklessness as "when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur"). Because Defendant did not testify, there was no direct evidence that he was confused about or did not remember the terms of his ban from Walmart.

*Id.* at *8 (footnote omitted). The TCCA, considering the circumstantial evidence, noted that the trespass notification provided "clear evidence" that Petitioner knew he was not allowed on Wal-Mart's property, and therefore concluded that the trial court did not err when it denied the request to include the instruction. *Id*. at *9.

First, the Court finds that Petitioner's claim raises an issue of state law that is not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(a) (providing petitioner seeking relief must assert he is in custody in violation of Constitution or federal law); *Estelle*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). It otherwise determines that failing to give the instruction did not violate Petitioner's due process rights, as the proof in this case was sufficient to establish beyond a reasonable doubt that Petitioner committed burglary under Tennessee law. The record supports a determination that the mere fact that Petitioner frequently violated the no-trespass notification is not proof that he was mistaken of its existence or unaware of the risk of violating it. Accordingly,

10

the decision rejecting this claim is neither contrary to, nor does it involve an unreasonable application of clearly established federal law governing Petitioner's due process rights.

## B. Rule of Lenity

Petitioner also argues that the jury should have been instructed as to the "rule of lenity" [Doc. 1 at 9]. Specifically, Petitioner claims that the jury should have been instructed that "it is a basic rule of criminal justice that criminal statutes be strictly construed, and their ambiguities, if any, resolved in favor of the accused and against the state. Therefore, if you find that there is any ambiguity in the criminal statutes under which the Defendant has charged, you should strictly construe the language of the statute and resolve such ambiguity in favor of the Defendant [Doc. 6-1 at 143].

The Court iterates that that Petitioner's claim raises an issue of state law that is not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(a) (providing petitioner seeking relief must assert he is in custody in violation of Constitution or federal law); *Estelle*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions).

The Court otherwise notes that the TCCA determined that a rule of lenity instruction was improper, as the burglary statute "is clear and unambiguous," and Petitioner's proposed instruction failed to accurately state Tennessee law. *Lawson*, 2019 WL 4955180, at *6-7. The United States Supreme Court has held that the "rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what [the legislature] intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (citation, internal citation, and internal quotation marks omitted). As the Court has repeatedly noted, the statute under which Petitioner was convicted prohibited an individual from entering a building without the owner's consent and committing or attempting to commit a theft.

11

The statute is clear as to what conduct is prohibited, and any ambiguity in the language is certainly not so grievously ambiguous as to offend due process principles. Accordingly, the decision rejecting this instruction is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law.

## V. CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

## VI. CONCLUSION

Petitioner has failed to demonstrate an entitlement to federal habeas relief. Therefore, his petition for a writ of habeas corpus will be **DENIED**, and this action will be **DISMISSED WITH PREJUDICE**. A certificate of appealability from this decision will be **DENIED**. Further, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

**AN APPROPRIATE ORDER WILL ENTER.**

ENTER:

_____
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE